SAMUEL THOMAS

v.

PRISCILLA THOMAS.

*Divorce—Separate Maintenance.*

1. Where an allowance is made a lien upon the lands of the husband in proceedings for separate maintenance, and the lien covers more land than is necessary to secure its payment, application may be made that the decree be modified in such respect.

2. This court declines, in view of the evidence, to interfere with a decree granting an amount named as an allowance in proceedings for separate maintenance.

[Opinion filed September 20, 1892.]

APPEAL from the Circuit Court of Iroquois County; the Hon. C. R. STARR, Judge, presiding.

Messrs. KAY & KAY, for appellant.

Messrs. PAYSON & OREBAUGH, FREE P. MORRIS and F. L. HOOPER, for appellee.

CARTWRIGHT, J.   The parties to this suit were married March 18, 1886, and lived together about five months, when they separated. Appellee filed her bill for separate maintenance September 9, 1890, and on final hearing a decree was entered allowing her $150 per annum, and making the allowance a lien on appellant's land.

Appellant objects to the decree and insists that the evidence did not warrant any relief; that the amount allowed is excessive, and that his lands are unnecessarily burdened by making the allowance a lien on more land than is required to secure it.

The parties had each been twice married before this marriage, were both of mature years and had children who lived with them. It appears from the evidence that at the time of the separation and previous thereto, appellee was in ill health and was under medical treatment for nervous and hysterical troubles. There is testimony that this condition was induced in the summer of 1886, by being overheated while at work picking currants. She left appellant while in that condition and went to her former home about two miles from his residence. She testified that appellant said she was crazy and must go home, while his testimony was that he had expressed the opinion that she was crazy or acted as though she was crazy during this period, but that he tried to persuade her to remain. The evidence shows very satisfactorily that he manifested very little sympathy or consideration for her at that time. When the separation took place he took her to her former home, and the evidence justifies the belief that he had no very serious objection to her leaving and acquiesced in her doing so, if he did not encourage it. He frequently went to see her after the separation, and within a few weeks she asked him if she might come back. He objected that he could not take her home at that time on account of having some machinery on the wagon. After this she frequently made similar requests. He testified that she asked to come home fifty times, and that he told her that when she wanted to come back she should load up her things and come. His opinion was that

he did not have to go after her. She testified that she asked him to take her back a hundred times—almost every time she saw him—but that his answers were vague; that it was never convenient, and that he always postponed it indefinitely. His testimony throws some light on his wishes in the matter and aids in explaining his conduct. He testified that he heard in some way that she was coming back and went to Mr. Vennum, and said, " The woman is coming back. What had I better do ? " And Vennum told him that he could not help it, and must not use any force to put her out. His seeking advice as to what he should do if she came back, and his version of the conversation indicates that he did not want her to return, and his conduct confirms the belief that such was the fact. She testified that he frequently remained with her over night at her home and also occupied a room with her at a hotel during the trial of a lawsuit, and on these occasions that they occupied the same bed, and sustained the relations of husband and wife, the same as before the separation. He testified that he stayed at her house "lots of nights " but that he slept on the lounge, except when he laid across the foot of the bed or got in behind her, "and laid there till daylight and slept ;" and that at the hotel after he had gone to bed some one woke him up by getting over him in bed, but he asked no questions and went to sleep, and in the morning the unknown intruder was gone; and that he had not since the separation sustained the relation of husband to her as testified by her. It would not appear to be doing violence to any presumptions arising from the evidence, to adopt her statement as giving the true version of the relations of these parties. It might be difficult to reconcile the undisputed fact of her constant desire to return to his home and live with him, with the assumption that his evidence of utter indifference on such occasions was correct. Accepting her evidence as true, his duty while frequently visiting her and sustaining these relations, is not to be regarded exactly as in a case where a wife has left her husband and he neither seeks nor sustains any relations with her, but leaves her free to return and resume

them at his own house, if at all. Under all the circum-
stances it was only reasonable when he came to visit her and
she asked to return with him, that he should have taken her
back. It follows that she remained separate from him
against her wish by his desire, and therefore that she so
remained and lived without her fault.

Appellant owned a farm of two hundred acres worth forty
dollars per acre, and personal property worth a thousand
dollars, and his indebtedness was small. The allowance
made was not unreasonable. If the allowance is made a lien
on more land than is necessary to secure its payment, ap-
plication may be made to the Circuit Court and the decree
will be modified in that regard. There has been no action
of the Circuit Court upon an application or motion for that
purpose. The attention of the Circuit Court should first be
called to that question. The decree will be affirmed.

*Decree affirmed.*